**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DARYL EIDENIER,<br>Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 1:25-CV-614-JEM |
| FRANK BISIGNANO, Commissioner of the Social Security Administration,<br>Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1] filed by Plaintiff Daryl Eidenier on November 17, 2025, and a Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 16], filed by Plaintiff on April 29, 2026. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On July 30, 2026, the Commissioner filed a response, and Plaintiff filed a reply on August 24, 2026. For the following reasons, the Court remands the Commissioner's decision.

## I. Background

In November 2017, Plaintiff first filed applications for benefits with an amended alleged onset date of August 1, 2009. His claims have been appealed to this court and remanded back to the ALJ twice for additional analysis. On December 17, 2024, Administrative Law Judge ("ALJ") William Pierson held a telephonic hearing at which Plaintiff, with an attorney, and a vocational expert ("VE"), testified. On March 7, 2025, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since August 1, 2019, the amended alleged onset date.

3. Through the date last insured of December 31, 2014, the claimant had the following severe impairments: cervical degenerative disc disease (DDD) with chronic left C7 radiculopathy; thoracic DDD; shoulder degenerative joint disease (DJD; and left cubital tunnel syndrome.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) with lifting, carrying, pushing and pulling of 10-pounds frequently and occasionally throughout the workday, with standing and/or walking of six hours in an eight-hour workday and with sitting of six hours in an eight-hour workday, as further limited by the following. The claimant cannot engage in overhead work/activity/reaching with the bilateral upper extremities, but he can frequently reach in all other directions, he can frequently handle/ finger and feel, and he can frequently bend/stoop, kneel, crouch, crawl, and use ramps and stairs, but he cannot climb ropes, ladders or scaffolds and he cannot work at exposed heights and around open and dangerous machinery.

6. The claimant has no past relevant work.

7. The claimant was a younger individual age 45-49 on the date last insured.

8. The claimant has at least a high school education.

9. From June 4, 2014, to April 23, 2017, transferability of job skills was not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability as defined in the Social Security Act from the alleged onset date of August 1, 2009, to December 31, 2014, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ "will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). "A reversal and remand may be required, however, if the ALJ committed an error of law, or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). At a minimum, "[a]n ALJ must provide an adequate 'logical bridge' connecting the evidence and [the] conclusions, but an ALJ's opinion need not specifically address every single piece of evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

## III. Analysis

Plaintiff argues that the ALJ erred in determining that a significant number of jobs were available that Plaintiff could do, erred in determining Plaintiff's mental limitations, and that the

opinion is internally inconsistent. The Commissioner argues that the opinion is supported by substantial evidence.

Plaintiff argues that the ALJ rejected all of the opinions in the record regarding Plaintiff's mental limitations and failed to obtain the opinion of a medical expert or recontact sources, leaving an evidentiary gap and filling it himself. The agency psychological consultants opined that Plaintiff had significant mental limitations, including moderate limitations in ability to concentrate, persist, or maintain space, and moderate limitations in ability to interact with the public. AR 68, 74, 85. The ALJ concluded that "[t]he findings by the state agency are not persuasive" because they are "inconsistent with the overall evidence as a whole or with an overall seemingly limited need of sustained mental health treatment prior to January 2014," Plaintiff sought only "conservative treatment," and the record includes "reports for involvement in a wide range of daily activities." AR 2004. Similarly, the consulting examiner found that Plaintiff experienced low average ability to think and reason, with a GAF score of 52,[1] AR 2091, but the ALJ discounted the findings in the exam as "inconsistent with the surrounding treatment" and "lack of documented treatment." AR 2002. The ALJ also disregarded the Department of Veterans Affairs conclusion that Plaintiff suffered 90% disability rating as a result of his PTSD because the Department of Veterans Affairs' "opinions are not binding upon the Social Security Administration." AR 2013. Although the

[1] GAF is a numerical scale of 0-100 used to rate the psychological, social, and occupational functioning of adults. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). **Error! Main Document Only.**A GAF score of 41-50 show serious symptoms, and of 51-60 shows moderate symptoms or moderate difficulties in functioning. *Id.*, *see also, e.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 693 (7th Cir. 2016) (*O'Connor-Spinner II*) ("[Plaintiff]'s GAF score once again was recorded as 50, indicating serious symptoms or functional impairments."); *Campbell v. Astrue*, 627 F.3d 299, 306-07 (7th Cir. 2010) ("A GAF rating of 50 does not represent functioning within normal limits. Nor does it support a conclusion that [the plaintiff] was mentally capable of sustaining work."). GAF scores are no longer used by the American Psychiatric Association, *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014), and the regulations state that GAF scores have no "direct correlation to the severity requirements in our mental disorders listings." 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000).

finding is not binding nor is it conclusive evidence that Plaintiff is fully disabled, it is further evidence that Plaintiff suffers significant mental limitations. The ALJ discounted or disregarded all of the medical evidence in the record regarding the extent of Plaintiff's mental health limitations, leaving an evidentiary deficit. *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV-178 JD, 2022 WL 2384031, at *4 (N.D. Ind. July 1, 2022) ("Although the ALJ is not required to adopt a specific physician opinion, by not adopting any medical opinion, the ALJ faced an evidentiary deficit.").

The Commissioner argues that it is the ALJ's job to determine a claimant's residual functional capacity, and an ALJ is not required to rely on a medical opinion to make that determination. However, in this case, the ALJ did not just reach conclusions based on a weighing of the evidence: he found all of the physician opinions to be unpersuasive, leaving the Court uncertain of what medical information was used to determine the RFC and raising concerns that the ALJ substituted his own medical assessment for those of the actual trained physicians. *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) ("ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions.") (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) (remanding because the ALJ improperly "played doctor"); *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("When an ALJ denies benefits, she must build an 'accurate and logical bridge from the evidence to her conclusion,' and she is not allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.") (quoting *Clifford*, 227 F.3d at 872) (other citations omitted).

The ALJ explained that he rejected the decisions of the medical sources in the record because Plaintiff had limited mental health treatment prior to January 2014 and because of his

activities of daily living. In particular, the ALJ pointed out that Plaintiff is able to go on vacation, cooked, did laundry and other household chores, and spent time with his children. The Court does not follow the ALJ's conclusion that being able to go to an outdoor beach location is inconsistent with the inability to spend time in close proximity to large crowds, since a beach vacation can involve avoiding any crowds, and having some good days (especially while on vacation) or being able to push through discomfort to spend time with family are not inconsistent with mental health limitations that foreclose the ability to work. S*ee, e.g., Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job."); *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("mental illness . . . may prevent the sufferer from . . . submitting to treatment"). In addition, the ALJ explained that he did not seek treatment with the VA before 2011 because he did not understand the process for obtaining treatment until a relative explained it to him. Before disregarding his symptoms because of lack of treatment, the ALJ was required to "consider[] possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

In addition, equating a plaintiff's ability to take care of personal hygiene or household chores with the ability to work fails to take into account "critical differences between activities of daily living and activities in a full-time job," such as the fact that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also, e.g., Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("a

person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full time"); *Punzio*, 630 F.3d at 712 ("[The plaintiff]'s ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."). In short, the ALJ discounted all of the medical opinion evidence in the record and relied on cherry-picked evidence in the record to conclude that Plaintiff suffered no mental limitations, despite his multiple diagnoses of PTSD, depression, and anxiety. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) ("An ALJ cannot rely only on the evidence that supports her opinion.") (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

This case is being remanded for a new, thorough determination of what mental limitations, if any, Plaintiff experienced. Plaintiff also points out that the ALJ found him capable of "a full range of light work" at one point in the opinion, AR 2014, but earlier in the opinion that he was limited to a "reduced range of light work." AR 2006. Those findings are inconsistent and leave the court unable to determine Plaintiff's limitations or to trace the logic between his evidence and his conclusion that there are jobs Plaintiff is able to do. In addition, the ALJ is reminded of the need to show a significant number of jobs that Plaintiff can perform. "[W]ork exists in the national

economy when it exists in significant numbers either in the region where you live or in several other regions of the country," but "14,500 jobs in the national economy . . . [is] not a significant number of jobs." *Darryl E. v. Kijakazi*, No. 1:21-CV-261-JVB, 2022 WL 3714742 at *4-5 (N.D. Ind. Aug. 29, 2022) (quoting 20 C.F.R. §§ 404.966(a), 416.1566(a)) (citing *James A. v. Saul*,471 F. Supp. 3d 856, 859-60 (N.D. Ind. 2020)); *see also Gass v. Kijakazi*, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021) (noting several courts "have found that a number of jobs close to 24,000 was not a significant number in the national economy") (collecting cases).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the relief requested in Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 16 [DE 16] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 24th day of November, 2026.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record